UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **VESI INCORPORATED** | : | Civil Action No.  1:19-cv-00696 |
| 16 Tech View Place | : | |
| Cincinnati, Ohio  45215 | : | Judge |
| | : | |
| **Plaintiff** | : | |
| | : | |
| -vs- | : | |
| | : | |
| **VERA BRADLEY DESIGNS, INC.** | : | **COMPLAINT WITH JURY DEMAND** |
| 12420 Stonebridge Road | : | |
| Roanoke, Indiana 46783 | : | |
| | : | |
| and | : | |
| | : | |
| **STEPHANIE LAWRENCE** | : | |
| c/o Vera Bradley Designs, Inc. | : | |
| 12420 Stonebridge Road | : | |
| Roanoke, Indiana  46783 | : | |
| | : | |
| **Defendants** | : | |

Now comes Plaintiff and for its complaint against the Defendants hereby states as follows:

## I.  THE PARTIES

1. Plaintiff Vesi Incorporated ("Vesi") is an Ohio for profit corporation located in Cincinnati, Hamilton County, Ohio.

2. Vera Bradley Design, Inc. ("Vera Bradley") is an Indiana corporation that does business in the State of Ohio.

3. Defendant Stephanie Lawrence is the Vice-President of Licensing for Vera Bradley and an Indiana resident.

## II.  JURISDICTION AND VENUE

4. Jurisdiction is based on 28 U.S.C. §1332(a) as the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between citizens of different states.

5. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) as the Plaintiff and Defendants do business in this judicial district and a substantive part of the events or omissions giving rise to the claims occurred in this judicial district.  Very Bradley actively maintains a business presence and actively markets its business in the Southern District of Ohio.  One such business presence is located at the Kenwood Mall located at 7875 Montgomery Road, Cincinnati, Ohio  45236.

6. Ohio has jurisdiction pursuant to its Long Arm Statute set forth under Ohio Revised Code §2307.382 because both Defendants:

   (a) transact business in the State of Ohio;

   (b) contract to supply goods and services in Ohio;

   (c) caused tortious injury by an act or omission in Ohio;

   (d) caused tortious injury in Ohio by an act or omission outside of the State as Vera Bradley and Lawrence regularly do and solicit business in Ohio, and derive substantive revenue or services rendered in the State;

   (e) caused tortious injury in Ohio to Plaintiff by acts outside of the state committed with the purpose of injuring Plaintiff when Very Bradley and Lawrence might reasonably have expected that Plaintiff would be injured in this State by their acts.

## III.  STATEMENT OF FACTS

7. Pursuant to its Conflict of Interest and Business Ethics Policy for Vera Bradley, it, as a matter of policy, is committed to honesty and fair dealing.  Specifically,

> "Vera Bradley is committed to honest and fair business dealing.  Each director, officer, employee, representative, agent, and consultant should

2

>   deal fairly with Vera Bradley's customers, suppliers, and partners. No
>   director, officer, employee, representative, agent, or consultant should
>   take unfair advantage of anyone through misrepresentation of material
>   facts, concealment, manipulation, abuse of confidential or privileged
>   information, or any other unfair dealing practice.

(Attached as Exhibit 1).

8. Each director, officer, employee representative, agent, or consultant of Vera Bradley is expected to adhere to the terms of this Conflict of Interest Policy. The facts of this case show that as between the business relationship between Vesi and Very Bradley, Vera Bradley took advantage of its fiduciary relationship between the two entities thereby causing the corporate demise of Vesi.

9. By 2016, Vesi had a long standing excellent reputation of marketing clothing and merchandise apparel within the collegiate market.

10. In order to successfully market that merchandise, Vesi had acquired licenses which authorized Vesi to manufacture directly, or in partnership with third party vendors, to sell merchandise bearing various Licensed Marks.

11. Licensed Marks are exclusive logos or other proprietary marks of various colleges and universities that have directly or through an agent or representative authorized Vesi to use such logos or proprietary marks on Vesi merchandise and third party vendors.

12. In 2016, Vera Bradley wished to market certain products to various third party retailers including, but not limited to, backpacks, totes, satchels, purses, handbags, fanny packs, women's accessories, and blankets (hereinafter referred as "Approved Merchandise"), manufactured by Vera Bradley which contained Licensed Marks for which Vesi owned a license, or for which Vesi could obtain a license. These included, but were not limited to, licenses for merchandise held by the NCAA, NFL, MLB, NBA, and other sport entities.

13. To accomplish this goal, Vera Bradley entered into a partnership/agency relationship whereby Vesi authorized Vera Bradley to manufacture, directly or indirectly, the "Approved Merchandise" which bore the Licensed Marks acquired by Vesi to be sold exclusively by or through Vesi. Vera Bradley promised that it would purchase these goods from Vesi to be distributed to independent retailers with whom Vera Bradley had a business relationship.

14. As part of this partnership/agency relationship, Vesi and Vera Bradley expressly and/or impliedly agreed to act in a fiduciary manner towards one another which included a duty of good faith and fair dealing, a duty of loyalty, duty of care, and duty of nondisclosure.

15. For over two years, Vesi and Vera Bradley acted in accordance with the partnership/agency relationship. Vera Bradley sold the Approved Merchandise to Vesi which was resold to Vera Bradley's third party independent retailers with Vesi's Licensed Marks. Vera Bradley did not sell any Approved Merchandise to any other person or entity that had licensing rights to produce or sell items bearing Licensed Marks and did not seek to obtain any license that would allow it to sell Approved Merchandise bearing a Licensed Mark except with Vesi.

16. As part of that business arrangement, Vera Bradley and Vesi agreed to a Royalty Schedule which is attached as Exhibit 2 herein.

17. In 2018, Vesi experienced a business setback in its relationship with Amazon which negatively affected its cash flow.

18. On September 21, 2018, Rob Wallstrom, the President of Vera Bradley, requested a meeting with two of the principals for Vesi, Greg Visconti and Dale Davidson. That meeting occurred on November 6, 2018. On that date, Wallstrom proposed that Vera Bradley would

purchase Vesi. Visconti and Davidson told Wallstrom that Vesi was experiencing a cash flow problem due to its prior relationship with Amazon.

19. Regardless, on or about November 6, 2018, Wallstrom and John Enright, the Chief Financial Officer for Vera Bradley, presented an offer from Vera Bradley to purchase Vesi while supporting its principals with salaries in excess of $100,000 a year.

20. In response to the Vera Bradley offer, between November 6, 2018 and November 15, 2018, Vesi put together a proposal for Vera Bradley to purchase Vesi which included submitting confidential financial and business information to Vera Bradley at its request. This confidential information presented on November 15, 2018 revealed that unless additional funding was received from Vera Bradley, its partner, Vesi would run out of cash by April 1, 2019.

21. On or about January 3, 2019, the National Football League ("NFL") corporate office contacted Vesi's third principal, Susan Litster, to discuss a potential business arrangement including Vesi becoming a licensed distributor for NFL merchandise.

22. On January 22 and 23, 2019, Susan Litster visited with the NFL to continue discussions about a potential business opportunity which would not only be financially beneficial to Vesi, but also to Vera Bradley.

23. Between January 25, 2019 and January 30, 2019, Susan Lister communicated to Stephanie Lawrence that the meetings between the NFL and Vesi, with Litster as the representative for Vesi, went very well and Vera Bradley could expect to be favorably treated as part of the Vesi/NFL relationship.

24. After that communication, Lawrence contacted the NFL in order to inquire about the potential business relationship between Vera Bradley and the NFL without the inclusion of Vesi.

25. On February 26, 2019, Vera Bradley, through Enright, indicated that rather than purchasing Vesi, Vera Bradley preferred to provide a bridge-loan in the approximate amount of $500,000 to assist in the cash flow needs for Vesi. In the meantime, Lawrence requested that Susan Litster meet with her in Fort Wayne, Indiana to further the discussions regarding a possible NFL relationship. That meeting occurred the morning of March 6, 2019. Later that day, Lawrence forwarded to the NFL information that Vera Bradley was putting together its own team in place so as to enter into a business relationship with the NFL to the detriment of Vesi.

26. On March 21, 2019, Vesi placed an order to Footjoy/Acushnet Corporation. Footjoy/Acushnet rejected the order on the basis that Vesi was on a "credit hold" with Footjoy/Acushnet. Vesi later learned that Lawrence had contacted the president of Footjoy/Acushnet and informed him that Vesi was bankrupt.

27. On March 21, 2019, Visconti and Davidson discussed with Wallstrom and Enright the potential financial assistance from Vera Bradley that had previously been offered by Wallstrom and Enright. Enright stated that Vera Bradley no longer intended to loan money to Vesi, but instead discussed a possible advance on Vesi's receivables from funds owed to Vesi by Vera Bradley resulting from sales of Vera Bradley approved merchandise. For the first time, Wallstrom also offered the possibility of Vera Bradley purchasing Vesi's assets and having Vera Bradley hire Susan Litster as an employee of Vera Bradley.

28. On April 1, 2018, Visconti and Davidson talked to Wallstrom and Enright who, after having received confidential business and financial information from Vesi, told Visconti

and Davidson that Vera Bradley was no longer in the position to purchase Vesi, offer a loan, nor an advance on its own receivables. Wallstrom and Enright stated, however, that Vera Bradley still wished to employ Susan Litster.

29. On April 4, 2019, Vera Bradley offered Susan Litster an employment position to run Vera Bradley's licensed business which previously had been part of the business relationship between Vesi and Vera Bradley since 2016. On or before April 8, 2019, Susan Litster accepted the Vera Bradley position, left her employment with Vesi a short time later, and began with Vera Bradley on April 22, 2019.

30. On or about April 25, 2019, Visconti communicated with Wallstrom to let him know that a subsidiary company for Vesi identified as "Club Level Brands" ("CLB") had secured financing and therefore Visconti and Davidson would be in a position to continue to serve Vera Bradley in the same capacity as Vesi had served Vera Bradley over the last three years. Wallstrom responded to Visconte on April 29, 2019, "Congratulations".

31. Approximately 18 minutes later, Wallstrom sent an email that in light of Vesi's financial insecurity, Vera Bradley would be exploring strategic options in the future for the Vera Bradley Collegiate Initiative and that Vera Bradley was not comfortable with the "current partnership's viability" between Vesi and Vera Bradley. Further, Wallstrom took the position that notwithstanding CLB's close association with Vesi and its principal owners, Vera Bradley did not have any business relationship with CLB.

32. The next day, on April 30, 2019, Lawrence, on behalf of Vera Bradley, forwarded a communication to Stacey Saccardo of the NFL, with a copy to Susan Litster that Vera Bradley had great news, "Susan Litster has joined Vera Bradley as our new director of Collegiate/Team".

7

She further asked when Saccardo had "a few minutes later this week or early next for a call to restart our conversation regarding Vera Bradley and the NFL".

33. On May 30, 2019, Vesi was informed by Lawrence that its "partnership" with Vera Bradley was no longer viable and that Vera Bradley would be taking over full responsibility for the Vera Bradley Collegiate business.

34. In addition to the foregoing, over the last two years Vera Bradley was shipping material that had a "bleeding" issue. Those materials were defective and caused losses to Vesi in excess of $50,000.

35. Vesi forwarded evidence of the $50,000 loss it sustained due to the bleeding issue which Vera Bradley later submitted to its insurance company.

36. Upon receipt of funds from its insurance company, Vera Bradley forwarded only $10,000 to Vesi to cover the $50,000 in losses.

37. Upon information and belief, Vera Bradley retained the excess amount of the funds received from its insurance company arising from the losses sustained by Vesi.

38. Part of the resolution with Vera Bradley's insurance company, for Vera Bradley to receive payment for the bleeding merchandise was that the defective material would be destroyed. The alleged destruction of the defective material was later confirmed by Vera Bradley to Vesi. That representation was false.

39. In the Spring of 2019, materials were shipped by Vera Bradley which contained the bleeding issue that allegedly had been resolved the prior year.

40. On May 22, 2019, Lawrence was informed by Visconti that the bleeding issue had not been resolved and that Vesi intended to send an email to its remaining customers identifying

8

the specific defect in the materials and suspending shipments until Vera Bradley had corrected the problem.

41. Lawrence responded that it was premature for Vesi to communicate with customers and that their internal testing showed no bleeding. Lawrence stated that Vera Bradley was "closing the file".

42. On May 23, 2019, Visconti communicated to Lawrence that Vesi had possession of numerous boxes of material sent by Vera Bradley that continued to have a bleeding issue and were defective. No response was received to this communication and Vesi still retains the materials for which Vera Bradley was allegedly paid by the insurance company and which Vera Bradley represented had been destroyed.

## IV. CAUSES OF ACTION

### COUNT ONE
### (Breach of Fiduciary Duty)

43. Plaintiff realleges the allegations contained in paragraphs 1 through 42 as if fully rewritten herein.

44. As a result of the partnership/agency relationship between Vera Bradley and Vesi, there existed a fiduciary relationship with Vera Bradley to act in good faith, deal fairly, a duty of care, a duty of loyalty, and a duty of disclosure.

45. Vera Bradley breached its fiduciary relationship with Vesi by:

   a. obtaining confidential financial and business information from Vesi without any intent of providing financial assistance to aid the survival of Vesi and continue its business relationship with Vera Bradley;

   b. raiding Vesi of its key employee, Susan Litster in order to begin a competing business with Vesi;

    c. engaging in unlawful acts for purposes of acquiring Vesi's proprietary Licensed Marks in order to sell and market merchandise that previously had been sold in a partnership with Vesi;

    d. using confidential business and financial information of Vesi to publish untrue and defamatory statements to third parties including, but not limited to, Footjoy/Acushnet corporation that Vesi was bankrupt;

    e. directing Vesi to send defective materials to its customers and third parties for purposes of sabotaging Vesi's relationships with its third party customers so that Vera Bradley could assume those sales relationships without Vesi as the middleman;

    f. failing to pay Vesi for the losses it sustained for the defective merchandise manufactured by Vera Bradley for which Vera Bradley was reimbursed by its insurance company;

    g. usurping Vesi's corporate opportunity with the NFL.

46. As set forth herein, Vera Bradley's actions violated the duty of good faith and fair dealing, duty of care, duty of loyalty, and duty of disclosure.

47. As a direct and proximate result of its breach of fiduciary duty, Vesi has been injured in an amount not less than $10,000,000.

## COUNT TWO
**(Unfair Competition)**

48. Plaintiff realleges the allegations contained in paragraphs 1 through 47 as if fully rewritten herein.

49. Under Ohio law, companies are prohibited in engaging in unfair competition. That conduct ordinarily consists of representations by one person, for the purpose of deceiving

the public, that his goods are those of another.  The concept of unfair competition may also extend to unfair commercial practices such as malicious litigation, circulation of false rumors, or publication of statements, all designed to harm the business of another.

50. Lawrence's comments to Footjoy/Acushnet that Vesi was bankrupt or going bankrupt in order to cutoff a supplier of Vesi thereby putting it out of business constitutes unfair competition for which Vera Bradley is liable.

51. As a direct and proximate result of Vera Bradley's unfair competition, Vesi has been injured in an amount to be determined at trial.

## COUNT THREE
### (Defamation)

52. Plaintiff realleges the allegations contained in paragraphs 1 through 51 as if fully rewritten herein.

53. The statements by Lawrence that Vesi was bankrupt were false and defamatory subjecting Lawrence to compensation and punitive damages in an amount to be determined at trial.

## COUNT FOUR
### (Tortious Interference with Prospective Business Relationship)

54. Plaintiff realleges the allegations contained in paragraphs 1 through 53 as if fully rewritten herein.

55. In 2018 and 2019 there existed a prospective business relationship between Vesi and the NFL.

56. Vera Bradley and Lawrence were aware of this prospective business relationship.

57. In 2019, Vera Bradley breached its fiduciary duty and intentionally interfered with that prospective relationship by hijacking that corporate opportunity and causing a termination of further negotiations between the NFL and Vesi.

58. As a direct and proximate result, Vesi sustained damages in the millions of dollars.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly and severely in an amount to be determined at trial, but not less than $10,000,000, for punitive damages, reasonable attorney fees, prejudgment interest, and any other additional relief to which Plaintiff may be entitled.

Respectfully submitted,

/s/   Mark J. Byrne
**MARK J. BYRNE (0029243)**
Trial Attorney for Plaintiff
JACOBS, KLEINMAN, SEIBEL & McNALLY, LPA
Cincinnati Club Building
30 Garfield Place, Suite 905
Cincinnati, Ohio  45202
Phone:  (513)  381-6600
Fax:     (513)  381-4150
E-mail:  mbyrne@jksmlaw.com

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.