IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| VESI INCORPORATED, | : | Case No. 1:19-cv-696 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| VERA BRADLEY DESIGNS, INC., and STEPHANIE LAWRENCE, | : | |
| | : | |
| Defendants. | : | |

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This case is before the Court on the Motion to Dismiss for Lack of Jurisdiction (Doc. 9) filed by Defendant Stephanie Lawrence ("Lawrence").  Lawrence requests that the Court dismiss her from this lawsuit for two reasons.  First, she argues the Court lacks personal jurisdiction over her, warranting dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  Second, she argues for dismissal pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process.  Plaintiff filed a response in opposition (Doc. 22), to which Lawrence filed a reply (Doc. 24), making this matter ripe for the Court's review.

### FACTS

On August 23, 2019, Plaintiff Vesi Incorporated ("Vesi") filed the present lawsuit against Vera Bradley Design, Inc. ("Vera Bradley") and Lawrence in her capacity as Vera Bradley's Vice President of Licensing.  (Doc. 1.)  Vesi, an Ohio corporation, brought the case in federal court based on diversity jurisdiction as Vera Bradley is an

Indiana corporation[1] and, as alleged, Lawrence is a resident of Indiana (although it appears undisputed that she is actually a resident of New Hampshire).

This lawsuit stems from a broken business relationship wherein Vesi would acquire various merchandise licenses from the NCAA, NFL, MLB, NBA, and other sport entities, and then Vera Bradley would help with the manufacturing, sales, and distribution of said merchandise. (*Id.*)

As Plaintiff alleges, Lawrence began her employment with Vera Bradley in April 2016. (Doc. 22.) From the date of her employment through April 2019, Lawrence communicated with Vesi employees in Cincinnati on hundreds of occasions, either through email or telephone. During some of these communications, Lawrence "would refer to the relationship between Vesi and Vera Bradley as a partnership." (*Id.* at p. 9.) Lawrence, who lives in New Hampshire, keeps an apartment in Roanoke, Indiana, which, as Plaintiff points out, is approximately a three-hour drive from Cincinnati. She had told Gregory Visconti ("Visconti"), Vesi's president, that, on occasion, "she would stay the weekend in Indiana and work from the Vera Bradley offices in Indiana rather than travel to her home in New Hampshire." (*Id.* at p. 8-9.)

Starting in 2018, Vesi began experiencing financial setbacks. (Doc. 1.) In September 2018, Vera Bradley's President, Rob Wallstrom ("Wallstrom"), requested a meeting with Vesi. During this meeting, Wallstrom and Vera Bradley's CFO John Enright ("Enright") proposed that Vera Bradley purchase Vesi. In response, Vesi put

---

[1] "Vera Bradley regularly does business in Ohio and does not contest personal jurisdiction." (Doc. 24.)

2

together a business proposal which included confidential information revealing that "unless additional funding was received from Vera Bradley, its partner, Vesi would run out of cash by April 1, 2019." (*Id.* at ¶ 20.) Plaintiff does not allege that Lawrence was involved in these negotiations.

Meanwhile, in January 2019, the NFL approached Vesi's third principal, Susan Litster ("Litster"), to discuss a potential business relationship. After visiting with the NFL, Litster communicated to Lawrence that "the meetings between the NFL and Vesi… went very well and Vera Bradley could expect to be favorably treated as part of the Vesi/NFL relationship." (*Id.* at ¶ 23.) Vesi alleges that Lawrence then contacted the NFL to inquire about a potential business relationship between Vera Bradley and the NFL without the inclusion of Vesi. Lawrence subsequently requested that Litster meet with her in Fort Wayne, Indiana to further discuss a possible NFL relationship. The two met on March 6, 2019. Vesi alleges that, later that day, Lawrence contacted the NFL to tell them that Vera Bradley was putting together its own team in place so as to enter into a business relationship with the NFL "to the detriment of Vesi." (*Id.* at ¶ 25.)

In March 2019, Vesi attempted to place an order with a supplier, Footjoy/Acushnet Corporation ("Footjoy"), but was rejected. Vesi later learned that Lawrence had contacted Footjoy's president and told him that Vesi was bankrupt. (*Id.*)

Meanwhile, negotiations between Vesi, Wallstrom, and Enright continued. On March 21, 2019, Wallstrom offered, for the first time, the possibility of having Vera Bradley hire Litster as an employee of Vera Bradley. Negotiations continued but, on April 1, Wallstrom and Enright notified Vesi that Vera Bradley was no longer in a

3

position to purchase Vesi. However, Wallstrom stated that Vera Bradley still wished to employ Litster. Three days later Vera Bradley offered Litster a position to run its licensed business, which, as Vesi alleges, had previously been a part of the business relationship between Vesi and Vera Bradley since 2016. Litster accepted the position and began working for Vera Bradley on April 22, 2019. (*Id.*) Again, Vesi does not allege that Lawrence was involved in these negotiations.

On April 25, 2019, Visconti informed Wallstrom that one of Vesi's subsidiary companies had secured financing and would therefore be in a position to continue to serve Vera Bradley in the same capacity as it had over the last three years. Wallstrom responded four days later, "Congratulations." (*Id.* at ¶ 30.) However, Wallstrom then allegedly sent an email indicating that Vera Bradley was not comfortable with the "current partnership's viability" between Vesi and Vera Bradley and that Vera Bradley would be exploring other strategic options in the future. (*Id.* at ¶ 31.) The next day, Lawrence forwarded a communication to the NFL, stating that it had great news: "Susan Litster has joined Vera Bradley." (Id. at ¶ 32.) And, on May 30, 2019, Lawrence informed Vesi that its "partnership" with Vera Bradley was no longer viable. (*Id.*)

On August 28, 2019, Vesi sued Vera Bradley and Lawrence, alleging four causes of action. (Doc. 1.) Crucial to the disposition of this motion, Lawrence is a named defendant in only one of the causes of action—Count Three for defamation. (Doc. 1.)

## LAW

When a defendant moves to dismiss a case pursuant to Fed. R. Civ. P 12(b)(2), and the district court rules on the motion without an evidentiary hearing, the plaintiff

need only make a prima facie case of jurisdiction. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). The Sixth Circuit has characterized this burden as "relatively slight." *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir.1988).

In determining whether plaintiff has met its burden, the district court considers the pleadings and affidavits "in a light most favorable to the plaintiff" and does not weigh "the controverting assertions of the party seeking dismissal." *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017) (*quoting Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991)). This rule "prevent[s] non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Theunissen*, 935 F.2d at 1459. However, courts "may consider the defendant's undisputed factual assertions." *Conn*, 667 F.3d at 711.

## ANALYSIS

### I. Personal Jurisdiction

"Unlike other jurisdictions, Ohio does not have a long-arm statute that reaches to the limits of the Due Process Clause, and the analysis of Ohio's long-arm statute is a particularized inquiry wholly separate from the analysis of Federal Due Process law." *Conn*, 667 F.3d at 712. Accordingly, in order to defeat Defendant's Fed. R. Civ. P. 12(b)(2) motion to dismiss, Vesi must demonstrate that (1) Lawrence is subject to jurisdiction under one of the nine enumerated bases listed in Ohio's long-arm statute, and (2) jurisdiction over Lawrence, individually, satisfies Due Process. *Id*. "Of course, if jurisdiction is not proper under the Due Process Clause it is unnecessary to analyze jurisdiction under the state long-arm statute, and vice-versa." *Id*. at 711–12

(*citing Brunner v. Hampson*, 441 F.3d 457, 467 (6th Cir. 2000)).

Here, Vesi cannot show that the cause of action "arises from" Lawrence's contact with Ohio, as necessary under the Due Process Clause of the Fourteenth Amendment. Thus, analyzing jurisdiction under Ohio's long-arm statute is unnecessary.

**A. Due Process**

The due process standard for a Fed. R. Civ. P. 12(b)(2) motion requires that "minimum contacts" are satisfied so as not to offend "traditional notions of fair play and substantial justice." *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (*citing International Shoe v. Washington*, 326 U.S. 310, 316 (1945)). Although personal jurisdiction may be general or specific, the Sixth Circuit has stated that "Ohio law does not appear to recognize general jurisdiction over non-resident defendants." *Conn*, 667 F.3d at 717. We therefore limit our analysis to that of specific jurisdiction.

The Sixth Circuit has developed a three-part test for the exercise of specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Conn*, 667 F.3d at 711 (*citing Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002)).

Moreover, it is well-settled that "jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation." *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974). And the Supreme Court has stated

that "[p]ersonal jurisdiction may be more easily established over corporate than human beings." *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 460 (2012).

### (1) Purposeful Availment

"Purposeful availment" is "the constitutional touchstone of personal jurisdiction," and it exists "where the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum State ... and where the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 550 (6th Cir. 2016) (*citing Neogen*, 282 F.3d at 889) (emphasis in original). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, ... or of the unilateral activity of another party or a third person[.]" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Here, Lawrence has purposefully availed herself of Ohio. Over a four-year period (April 2016-April 2019), Lawrence communicated with Vesi employees in their Cincinnati office on hundreds of occasions, either by telephone or email. (Doc. 22.) These communications were based in part on her desire and Vera Bradley's intent to expand the business relationship between Vera Bradley and Vesi. She would even refer to the relationship between the two entities as a partnership. (*Id.*) Viewing the evidence in the light most favorable to Vesi, we conclude that Vesi has made the required *prima facie* showing of purposeful availment.

### (2) Cause of Action Arising from Defendant's Activities

7

Next, for the Court to exercise specific jurisdiction over Plaintiff's claims, "the suit must arise out of or relate to the defendant's contact with the forum. In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780, 198 L. Ed. 2d 395 (2017) (internal quotations and citations omitted).

Vesi argues that its claims "arose out of" Lawrence's contact with Ohio because (1) she telephoned Footjoy and claimed that Vesi was going bankrupt, and (2) her communications with the NFL adversely affected Vesi's potential of a future business relationship with the NFL. (Doc. 22.) Both arguments are premised on the fact that "the harm suffered by Vesi in Ohio arose out of Lawrence's tortious conduct with these other third parties." (*Id.*) However, the Supreme Court has held that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 278 (2014). Generally, a defendant's conduct that occurs outside the forum state, but harms a plaintiff within the forum state, is not enough to establish specific jurisdiction. *See Bristol-Myers*, 137 S. Ct. at 1781–82 (*citing Walden v. Fiore*, 571 U.S. 277, 291 (2014)). "What is needed… is a connection between the forum and the specific claims at issue." *Id*. And this connection must be "substantial." *Cmty. Tr. Bancorp, Inc. v. Cmty. Tr. Fin. Corp.*, 692 F.3d 469, 472–73 (6th Cir. 2012).

Vesi fails to allege such a connection. The only claim against Lawrence is for

8

defamation. But Vesi does not allege, nor argue, that any of Lawrence's "false and defamatory" statements were made in Ohio or were communicated to any third person in Ohio. Vesi concedes that Lawrence conducts her work either from her home in New Hampshire, her apartment in Roanoke, Indiana, Vera Bradley's offices in Indiana, or while on the road for work. And there is no evidence that Lawrence's telephone call with Footjoy occurred in Ohio, nor that any of Lawrence's communications with the NFL occurred in Ohio. The only substantial connection between Lawrence and the state of Ohio is Lawrence's communications with Sarah Litster. But none of those communications relate in any way to the defamation allegations. Simply put, this is no evidence that ties Lawrence's defamation related conduct to the state of Ohio. *See e.g., Oasis Corp. v. Judd*, 132 F. Supp. 2d 612, 622-23 (S.D. Ohio 2001); *James v. Hoffman*, 2018-Ohio-2422, ¶ 34, 112 N.E.3d 447, 459 (2nd Dist.); *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1120 (6th Cir. 1994).

In sum, none of the alleged conduct that Vesi asserts in support of its claim against Lawrence relate to Ohio. This detriment prevents Vesi from establishing a prima facie case of jurisdiction.

### (3) Exercise of Jurisdiction Reasonable

Because Vesi fails to establish that its defamation claim arises out of Lawrence's contacts with Ohio, the Court need not analyze whether the exercise of jurisdiction is reasonable. *See LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989) ("each criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked.").

## CONCLUSION

Accordingly, Defendant Stephanie Lawrence's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) is **GRANTED** and she is hereby dismissed from this suit. Her second claim, that she be dismissed pursuant to Fed. R. Civ. P. 12(b)(5), is **DENIED AS MOOT.**

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND