IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Vesi Incorporated, | : | |
| | : | Case No. 1:19-cv-696 |
| Plaintiff/Counterclaim Defendant | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Granting Motion for Summary Judgment |
| Vera Bradley Designs, Inc., | : | |
| | : | |
| Defendant/Counterclaimant | : | |

This matter is before the Court on the Motion for Summary Judgment filed by Defendant/Counterclaimant Vera Bradley Designs, Inc. ("VB" or "Vera Bradley") and the Motion for Leave to File a Sur-Reply filed by Plaintiff/Counterclaim Defendant Vesi Incorporated ("Vesi"). (Docs. 52, 93.) Vesi alleges in this suit that Vera Bradley breached the fiduciary duty it owed to Vesi. Vera Bradley moves for summary judgment arguing that there was no fiduciary relationship between the parties, that it did not breach a duty to Vesi, and that it caused no damages to Vesi. Vera Bradley also moves for summary judgment on its affirmative counterclaim alleging that Vesi and its principals, Greg Visconti and Dale Davidson, owe it $47,684.43 on Vesi's account. Vesi filed a Response in Opposition to the Motion for Summary Judgment, to which Vera Bradley filed a Reply. (Docs. 91, 92.) Vesi then moved to file a Sur-Reply, which Vera Bradley opposed. (Docs. 93, 94, 95.) For the reasons that follow, the Court will **GRANT** Vesi's Motion for Leave to File a Sur-Reply, but the Court also will **GRANT** Vera Bradley's Motion for Summary Judgment.

1

I.  **BACKGROUND**[1]

A.  **Factual History**

   1.  **The Parties**

Vesi was a for profit corporation owned by Gregory Visconti and Dale Davidson. Susan Litster was the VP of Sales until approximately one month before Vesi ceased business operations in 2019. Vesi obtained licensing rights to put universities' licensed marks onto apparel. In 2013 or 2014, Vesi shifted from manufacturing its own apparel to working with established apparel manufacturers like Brooks Brothers to put collegiate marks onto their apparel. Vesi handled the collegiate licensing rights, art, and administration, and it took a cut from sale of the apparel.

Vera Bradley is a publicly-owned corporation. At all times relevant hereto, Vera Bradley's President/CEO was Rob Wallstrom, its CFO was John Enwright, and its VP of Licensing and Strategic Initiatives was Stephanie Lawrence. Susan Fuller was the Chief Merchandising Officer until 2017.

   2.  **Vesi and Vera Bradley Relationship Overview**

In 2014, Vesi approached Vera Bradley about establishing a commercial relationship similar to the one it had with Brooks Brothers. In early 2015, Vesi and Vera Bradley started selling Vera Bradley bags and blankets with university logos on them. Vera Bradley manufactured the products, and either Vesi or a third-party embroidered the universities' logos onto them, and then Vesi sold them to retail stores, fan shops, and bookstores, and Vera Bradley sold them through its own channels. Vera Bradley used the license held by Vesi to be able to sell the collegiate products. (Doc. 76 at PageID 2958.) VB's Fuller testified that Vera Bradley had

---

[1] Agreed-to facts herein are derived from VB's Proposed Undisputed Facts and Vesi's Response. (Docs. 52-1; Doc. 91 at PageID 55–61.)

to put "trust with Vesi that they would remain in good standing with [the Collegiate Licensing Council ("CLC")] so that Vera Bradley could sell the goods to the proper universities." (Doc. 76 at PageID 2959.)

Vesi and Vera Bradley did not have a formal, written contract.[2] Instead, they operated pursuant to verbal agreement, a sales model, and a price list. If Vesi sold a product, it paid Vera Bradley a set amount pursuant to an agreed upon price list, and if Vera Bradley sold a product, it paid Vesi a set amount pursuant to the price list. How much either owed the other was determined during a monthly reconciliation and indicated on a worksheet. Vesi would pay royalties to the universities based upon the number of products sold with the universities' logos on them. VB's Lawrence described the business relationship between Vesi and Vera Bradley as one in which Vesi led the sales of Vera Bradley products for specific channels. (Doc. 84 at PageID 4108.)

Vesi and Vera Bradley were separate entities. They did not share profits and losses. They each were paid pursuant to a price list. The companies had separate offices and separate employees. They paid separate taxes. Vesi and Vera Bradley did not receive K-1s. They did not own or control property together. They had separate bank accounts. They had no executed partnership agreement. Vesi could not act to bind Vera Bradley. (Doc. 44 at PageID 415–418.)

In a September 10, 2015 email sent to Vesi's Visconti and Davidson, VB's Fuller stated that she was "so thrilled with what incredible partners we have chosen to help us bring this to the Vera customer." (Doc. 80-1 at PageID 3599.) She also stated that Vesi and Vera Bradley were

---

[2] Vesi and Vera Bradley exchanged several drafts of a written agreement to govern their relationship, but it was never executed. Vesi was opposed to one clause in every draft contract. For example, Vesi did not want to assume any risk for nonmoving inventory. Every draft of the proposed contract included a clause stating that Vesi and Vera Bradley were to be "independent contractors, and neither party is an employee, agent, partner or joint venture of the other." Vesi did not ever raise an objection to that proposed clause.

Vera Bradley had a written contract with its other collaborators. (Doc. 84 at PageID 4064.)

going into "the next phase of a very exciting business and partnership." (*Id.*) Four days later, Fuller wrote in an internal email that Vesi was "a great partner who is in exact parallel with a bigger, broader vision of how to drive a business." (*Id.* at PageID 3597.)

### 3. Color-Bleeding Issue

In 2016, there was an issue with color bleeding on certain VB bags when they got wet. Vera Bradley reacted to the problem in a punctual manner, performed testing, identified the case, notified the retailers, and recalled the defective products. In February 2017, Vesi provided notice to Vera Bradley of losses in the amount of $58,331 related to the bleeding issue. (Doc. 45-1 at PageID 890.) Vera Bradley submitted a claim to its insurance company in the amount of $700,000. (Doc. 80 at PageID 3529.) Vera Bradley settled the claim for a payment of $280,000, or 40% of the $700,000 claim. (*Id.* at PageID 3535; Doc. 80-1 at PageID 3601.) Vera Bradley paid Vesi only $10,000 in compensation, less than Vesi's pro rata share of the proceeds paid by the insurance company. (Doc. 80 at PageID 3535.) Vesi accepted the $10,000 payment and did not object to Vera Bradley prior to this lawsuit.

A few years later, Vesi again received two customer complaints about color bleeding in Vera Bradley bags, one in December 2018 and one in April 2019. (Doc. 44 at PageID 521–522.) Vesi tested the bags it had in its possession and confirmed the problem existed for some bags. (*Id.* at PageID 522.) Some bags with the bleeding problem could have been from the 2016–2017 bad batch because Vesi combined the inventory in its possession, but Visconti testified that at least some defective bags were found in unopened boxes that had been shipped Vera Bradley in 2019. (*Id.* at PageID 532–533.) Vera Bradley did its own testing, found no problem, and closed its file on the issue. (*Id.* at PageID 534–537.)

### 4. NFL Licensing–Initial Discussions

Susan Fuller, then the VB Chief Merchandising Officer, testified that Vera Bradley intended to expand into the professional sports licensing market with Vesi after establishing the collegiate licensing market. (Doc. 76 at PageID 2905–2907.) This included Major League Baseball and the NFL. (*Id.*) Sometime during 2017 or 2018, Vesi's Gregory Visconti and Susan Litster had meetings with the NFL to discuss a licensing agreement for VB products. (Doc. 44 at PageID 321–322.) Vesi never applied for the NFL license on Vera Bradley's behalf because the NFL already had an exclusive licensing arrangement with Dooney & Bourke, a different handbag manufacturer. (*Id.* at PageID 322–325.)

### 5. Vesi's Amazon Debacle and Business Losses

In May 2017, Amazon canceled a $2.8 million order it had placed with Vesi. Vesi lost a net profit of $800,000 on the order. Visconti stated that Amazon's cancellation placed Vesi "in a very deep hole" because Vesi paid factories to manufacture the product, but it could not generate any revenue to offset those payments. (*Id.* at PageID 423.) The resulting lack of cash flow prevented Vesi from being able to order merchandise for 2018. Visconti told Amazon in an email dated April 25, 2018 that he believed the losses might force Vesi into bankruptcy and Visconti and Davidson into personal bankruptcy because they personally guaranteed Vesi's loans. (*Id.* at PageID 433–436.) Visconti and Davidson met with corporate and personal bankruptcy counsel during 2018–2019. Davidson testified at his deposition that Vesi never "recover[ed] from the Amazon debacle." (Doc. 45 at PageID 692.) He also admitted that Vera Bradley had nothing to do with the Amazon cancellation. (*Id.*)

Vesi suffered business losses of more than $500,000 in 2017 and more than $400,000 in 2018. Visconti attributed the losses to both the Amazon cancellation and the fact that there was a

reduction of product sold from its Vera Bradley program in 2017. (Doc. 44 at PageID 442–444.) Regarding Vera Bradley, Visconti explained that Vera Bradley had not done anything wrong, but Vesi had overestimated sales in 2016 and had carryover product to account for in 2017. (*Id.*)

Vesi made some money doing contract embroidery for Footjoy in 2018, enough to keep "the machines running and the lights on." (*Id.* at PageID 449.) Vesi was unsure by February 2018 what its future would be because it was low on money. It owed $2.4 million to its lender, Huntington, at that time. The number of employees shrunk from a high of fifty in the 2006–2007 timeframe to fourteen in early 2019. (Doc. 45 at PageID 626–627.) Footjoy put Vesi on a credit hold in March 2019 after someone at Vera Bradley allegedly told a Footjoy executive that Vesi was bankrupt or going bankrupt. (*Id.* at PageID 763–766.) Footjoy took Vesi off credit hold almost immediately after Davidson spoke to Footjoy's CFO. (*Id.*) Davidson admitted that Vesi was in arrears with respect to Vera Bradley and other customers, and that it was considering filing for bankruptcy at that time. (*Id.* at PageID 767–768.)

### 6. Vesi's Consultations with Vera Bradley

In mid-2018, Vesi told Vera Bradley about the Amazon issue and its cash flow problems. (Doc. 44 at PageID 457–459.) Vera Bradley was Vesi's last remaining core account at that time. (*Id.* at PageID 448.) Vesi fell behind on payments it owed to Vera Bradley by as much as $120,000. (Doc. 44 at PageID 459–460.) Vesi asked Vera Bradley for a payment plan, and Vera Bradley accepted. (*Id.*; Doc. 45 at PageID 650.) From June of 2018 through April of 2019, Vesi's Visconti and Davidson had numerous conference calls and meetings with VB's Wallstrom and Enwright during which they discussed Vesi's financial situation and possible options, including increasing Vesi's margin, Vesi taking on investors, Vesi only doing embroidery, Vera Bradley acquiring Vesi, Vera Bradley providing a loan to Vesi, Vera Bradley providing an

advance to Vesi, and Vesi filing bankruptcy since it held the debt, and Visconti and Davidson filing personal bankruptcies since they guaranteed the debt. (Doc. 44 at PageID 478, 482, 499, 503; Doc. 45 at PageID 694–695, 699–700, 772.) They also discussed continuing business operations through Club Level Brands, as discussed in a separate subsection below.

Vesi provided Vera Bradley with three years of financial statement data in 2018 as part of these discussions. (Doc. 44 at PageID 408.) VB's President/CEO Wallstrom stated in a September 21, 2018 email to Vesi's Visconti that he wanted to meet to "brainstorm on our partnership and how to build a prosperous future." (Doc. 77 at PageID 3146.) By November 6, 2018, Vesi had $2.2 million in debt and $1.8 million–$1.9 million in assets. (Doc. 44 at PageID 478.) VB's CFO John Enwright wrote the following in a November 26, 2018 email to Vesi's Visconti:

> We're trying to determine what makes sense and how we can continue to partner with you to assist you to keep your company viable. I don't think an investment of $2 million by Vera makes 100% sense *on our side* right now but I'd like to understand a few additional details about *your debt and monthly cash flow* to see if we can put something together that is creative and works for both parties.
>
> Can you tell me when your debt is due? Monthly interest payments? General monthly cash flow needs, to operate the business as is?

(Doc. 77 at PageID 3153 (emphasis added).)

In December 2018, Vesi told Vera Bradley that it was likely to run out of cash in April 2019. (Dco. 44 at PageID 502–503.) Vesi believed that to stay viable in the first quarter of 2019 it had to find an investor, receive an injection of cash, or have Visconti and Davidson each file for personal bankruptcy as the guarantors of Vesi's loans. (Doc. 44 at PageID 503; Doc. 45 at PageID 735.) On April 1, 2019, Vera Bradley informed Vesi that it was not going to acquire it or provide it with a loan or an advance. (Doc. 45-1 at PageID 906–909.) VB's Wallstrom expressed doubt in Vesi's viability going forward even it if helped out. (*Id.* at PageID 906–909,

917.) He stated that Vesi's situation put Vera Bradley in a "precarious position." (*Id.* at PageID 908.) He said that even if Vera Bradley provided Vesi a loan "it looks like it is a significant risk, so the idea of prepaying for something that there's a risk, and . . . we're getting nervous." (*Id.* at 914.) He stated that Vesi and Vera Bradley could discuss continuing their relationship if Vesi had another means to stay viable. (*Id.* at PageID 909.)

VB's Wallstrom then wrote the following in an email to Vesi's Visconti on April 29, 2019:

> I wanted to outline our planned actions so that we can have a clear understanding on our current and future partnership between both Companies. As we discussed during our earlier call and in light of VESI's financial uncertainty, we will be exploring strategic options for the future of the Vera Bradley Collegiate initiative. We are certainly open to continuing the dialogue with VESI about future opportunities, but that will be dependent on a sound financial plan and capital structure. I know that you have been working on these two issues, but we have not yet seen a complete financial and capital plan that gives us comfort on the current partnership's viability.

(Doc. 78-1 at PageID 3368.)

### 7. Club Level Brands

Vesi created Club Level Brands in 2017, and its creation was unrelated to the Amazon problem, but Visconti and Davidson believed by 2018 that focusing on its CLB was a "good path going forward" for the company. (Doc. 45 at PageID 674–675.) CLB started as a website in December 2017 intended to serve as a direct-to-consumer portal. (Doc. 44 at PageID 436; Doc. 45 at PageID 674–675, 678.) CLB was spun off from Vesi and incorporated as a separate business in 2019. (Doc. 45 at PageID 678.) Vera Bradley had no contractual relationship with CLB. (Doc. 45 at PageID 681.)

CLB sold Vera Bradley bags on its website, but the intention was to sell other brands as well. (Doc. 45 at PageID 677, 680–681.) Vera Bradley bags accounted for as much as 70% of the sales on the CLB website. (Doc. 44 at PageID 437.) CLB sold a de minimis amount of

Footjoy products. (Doc. 45 at PageID 632.) CLB ultimately was not successful. (Doc. 45 at PageID 676, 681.) In late April 2019, Visconti told Vera Bradley that he secured financing for CLB by accessing his retirement savings or getting a second mortgage on his home. (Doc. 44 at PageID 540; Doc. 45 at PageID 793.) Visconti and Davidson set a meeting with Vera Bradley executives to discuss potential future business with Vesi reorganized as CLB, but Visconti and Davidson cancelled the meeting after their frustration with how Vera Bradley handled the recurrent color-bleeding issue. (Doc. 44 at PageID 546–548; Doc. 45 at PageID 811–812.)

### 8. Susan Litster

During time period that Vesi and Vera Bradley were discussing Vesi's financial problems and the possible ways Vera Bradley might help them continue in business, the issue of Susan Litster's employment arose. During a March 21, 2019 phone call with VB's Wallstrom and Enwright and Vesi's Visconti, Davidson, and Litster, several options for going forward were discussed. (Doc. 45 at PageID 753–759; Doc. 45-1 at PageID 901–904.) Litster's notes reflect the following:

> Rob[Wallstrom —] Throw Out—Option[—]negotiate something and bring equipment & Susan [Litster] in house—buy assets. [illegible].
>
> * * * *
>
> Rob [Wallstrom]—Buy Vesi—have Susan [Listster] run the business. Is that an option?

(Doc 45-1 at PageID 902–903.) Just over one week later, during the April 1, 2019 meeting, Vera Bradley again told Vesi that it was interested in talking to Litster about employment at Vera Bradley if Vesi was not going to continue as a viable entity. (Doc. 45 at PageID 782–784, 909.) In response, Visconti said, "Okay. We will get back to you—we'll—let me ask you this on Susan's behalf because we want what's best for Susan as well, would she be able to work from Cincinnati or would she be required to be in Fort Wayne?" (*Id.* at PageID 790.) Visconti

9

understood it was "an opportunity for [Litster] to secure her future." (Doc. 44 at PageID 554.) Litster began her employment with Vera Bradley on April 22, 2019. (Doc. 81 at PageID 3613.)

One of the last things Litster had done as a Vesi employee in terms of the Vesi and Vera Bradley relationship was introduce Vera Bradley representatives to NFL representatives at a Las Vegas trade show in January 2019. (Doc. 84 at PageID 4151.) Vera Bradley again was exploring obtaining a license for NFL products, but it intended to seek the license directly, not through Vesi. (*Id.* at PageID 4158.) Lawrence had told Litster that VB could not commit on expanding the Vesi business until the collegiate line was "in a steady state and growing." (*Id.* at PageID 4153.) As of January 24, 2019, it was not clear whether Vera Bradley would include Vesi as the embroiderer for its potential business relationship with the NFL. (*Id.* at PageID 4163–4164.) To this day, Vera Bradley has no deal with the NFL. (Doc. 44 at PageID 560.)

### 9. Shut Down of the Vesi Business

Vesi began the process of shutting down its business after April 1, 2019. (Doc. 45 at PageID 779–780.) Around this same time, Vesi found the recurrence of the bleeding handbag issue. (Doc. 44 at PageID 534–537.) It lost trust in Vera Bradley at that point because it was not satisfied with Vera Bradley's response to the recurrent problem. (*Id.*) Vesi and CLB ceased operations on May 31, 2019. (*Id.* at PageID 289, 537.) Vesi notified Huntington and its licensors that it was shutting down. (*Id.* at PageID 317, 457.) On July 11, 2019, Huntington took a cognovit judgment against Vesi, Visconti, and Davidson in the amount of $2,480,372.34, plus interest, late charges, costs, and attorney's fees. (*Id.* at 452; Doc. 50 at PageID 1068.) Huntington seized Vesi's assets. (Doc. 44 at PageID 455.)

When Vesi shut down, it owed Vera Bradley $47,684.43 for the products it had received. (Doc. 44 at PageID 560.) Visconti and Davidson personally guaranteed Vesi's debt to Vera

Bradley. (Doc. 44 at PageID 339; Doc. 45-1 at PageID 850.) Vesi asserts that the value of the inventory of Vera Bradley products in its possession exceeds the amount owed. (Doc. 88 at PageID 4744.)

**B.      Procedural History**

Vesi filed this suit against Vera Bradley and Stephanie Lawrence on August 23, 2019. (Doc. 1.) It asserted a claim against Vera Bradley for breach of fiduciary duty, unfair competition, and tortious interference with a prospective business relationship and against Vera Bradley and Lawrence for defamation. (*Id.* at 9–11.) Defendants filed their Answer, and Vera Bradley filed a Counterclaim against Vesi, Greg Visconti, and Dale Davidson on November 1, 2019. (Doc. 10.) In the Counterclaim, Vera Bradley seeks payment of $47,684.43 for goods ordered by Vesi and supplied by Vera Bradley. (*Id.* at PageID 62–63.)

Stephanie Lawrence moved to dismiss the claims against her for lack of jurisdiction. (Doc. 9.) On September 2, 2020, Judge Matthew W. McFarland, to whom the case was then assigned, granted her motion and dismissed Lawrence as a party. (Doc. 30.)

Following discovery, Vera Bradley moved for summary judgment on Vesi's claims against it and on its counterclaim against Vesi, Visconti, and Davidson. (Doc. 52.) Vesi opposed summary judgment on its claim for breach of fiduciary duty against Vera Bradley and on the counterclaim against it. However, Vesi withdrew its claims for unfair competition, defamation, and tortious interference against Vera Bradley. (Doc. 91 at PageID 4901.) After Vera Bradley filed its Reply brief, Vesi moved to file a Sur-Reply. (Docs. 92, 93.) Vera Bradley opposed the Court's consideration of the proposed Sur-Reply. (Doc. 94.) The Court reviewed the Sur-Reply and concluded that the arguments and evidence cited therein did not change the Court's analysis of the summary judgment issues. These matters are fully briefed and ripe for

adjudication. On September 9, 2022, the case was transferred to this Court's docket.

## II. STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden to show that no genuine issues of material fact are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–587 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–324 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

A court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "[F]acts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added); *see also EEOC v. Ford Motor Co.*, 782 F.3d 753, 760 (6th Cir. 2015) (*en banc*) (quoting *Scott*). A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014) ("A dispute is 'genuine' only if based on *evidence* upon which a reasonable jury could return a verdict in favor of the non-moving party.") (emphasis in original) (citation omitted).

12

"Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## III. ANALYSIS

### A. Vesi's Claim Against Vera Bradley for Breach of Fiduciary Duty

Vesi alleges that Vera Bradley breached a fiduciary duty to it in numerous respects. "A breach of fiduciary duty claim has three elements: (1) the existence of a duty arising from a fiduciary relationship, (2) a failure to observe such duty, and (3) an injury proximately resulting therefrom. *See Strock v. Pressnell,* 38 Ohio St. 3d 207, 527 N.E.2d 1235, 1243 (1988); *McConnell v. Hunt Sports Ent.,* 132 Ohio App. 3d 657, 725 N.E.2d 1193, 1215 (1999). Vera Bradley moves for summary judgment arguing that the material undisputed facts are not sufficient for a reasonable jury to find in Vesi's favor on any of the three elements.

The Court will begin by examining whether there is sufficient evidence for a reasonable jury to conclude that Vera Bradley had a fiduciary duty to Vesi. "A 'fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Stone v. Davis,* 66 Ohio St. 2d 74, 419 N.E.2d 1094, 1097–1098 (1981) (citation omitted); *see also Anchor v. O'Toole*, 94 F.3d 1014, 1023 (6th Cir. 1996) (quoting the same). Although Vesi originally alleged in the Complaint that the fiduciary relationship arose from the purported partnership or agency relationship between Vesi and Vera Bradley, it now asserts only that a *de facto* fiduciary relationship existed. (Doc. 1 at PageID 9; Doc. 91 at PageID 4928.)

A *de facto* fiduciary relationship can arise from an informal relationship, but only "when *both* parties understand that a special trust or confidence has been reposed." *Umbaugh Pole*

13

*Bldg. Co. v. Scott*, 58 Ohio St. 2d 282, 390 N.E.2d 320, at syllabus ¶ 1 (1979) (emphasis added). A party's testimony "that he reposed a special trust or confidence in [another] is insufficient as a matter of law to prove the existence of a fiduciary relationship" absent evidence that the other party understood the special trust has been reposed. *McDonnell v. Cardiothoracic & Vascular Surgical Assocs., Inc.*, No. C2-03-0079, 2004 WL 3733403, at *4 (S.D. Ohio July 30, 2004) (quoting *Schulman v. Wolske & Blue Co.,* 125 Ohio App. 3d 365, 372, 708 N.E.2d 753 (1988)), *aff'd,* 165 F. App'x 423 (6th Cir. 2006). "Unilateral trust without a known reciprocal obligation is not sufficient to create a fiduciary duty." *Randleman v. Fidelity Nat'l Title Ins. Co.,* 465 F. Supp. 2d 812, 823 (N.D. Ohio 2006).

The relationship created by ordinary arms-length commercial transactions is not a *de facto* fiduciary relationship. *See Rurbanc Data Syss., Inc. v. New Core Holdings, Inc.*, No. 3:11 cv 366, 2012 WL 2711507, at *3 (N.D. Ohio July 9, 2012); *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp. 2d 722, 739 (S.D. Ohio 2009). For example, "[a]dvice given by a creditor to a debtor in a commercial context in which the parties deal at arm's length, each protecting his or her respective interests" is insufficient to create a fiduciary relationship. *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St. 3d 433, 662 N.E.2d 1074, 1082 (1996) (citation omitted). "In Ohio, the manner of proving the existence of a fiduciary duty requires a case-by-case demonstration of the existence of special confidence and trust." *Shaver v. Std. Oil Co.*, 135 Ohio App. 3d 242, 733 N.E.2d 645, 647 (1999) (cleaned up); *see also Prudential Ins. Co. v. Eslick,* 586 F. Supp. 763, 766 (S.D. Ohio 1984) (stating that whether a *de facto* fiduciary relationship has been created "is a question of fact and depends on the circumstances of each case.")

The Court finds insufficient evidence, as a matter of law, that special circumstances existed that elevated the relationship between Vesi and Vera Bradley beyond that of businesses

14

engaged in arms-length commercial transactions to that of fiduciaries. Vesi relies first on evidence that its principals believed the parties had a fiduciary relationship. Vesi's Visconti and Davidson both testified that they believed Vesi and Vera Bradley had a relationship of trust based on working together on all aspects of the VB collegiate licensed product program. (Doc. 44 at PageID 395; Doc. 45 at PageID 658.) Visconti believed the relationship was beneficial to both parties. (Doc. 44 at PageID 407.) Davidson believed that Vera Bradley owed a fiduciary duty to Vesi. (Doc. 45 at PageID 658.) This testimony, however, does not establish that Vera Bradley understood that Vesi had reposed a special confidence and trust in it. *Umbaugh Pole Bldg. Co.*, 390 N.E.2d 320, at syllabus ¶ 1 (explaining that both parties must understand the special relationship exists). In fact, Davidson testified that no one from Vera Bradley ever told him that they considered the companies to have a fiduciary relationship. (Doc. 45 at PageID 658.)

Vesi tries to remedy this deficiency by pointing out that Susan Fuller, VB's Chief Merchandising Officer until 2017, referred to Vesi as Vera Bradley's "partner" in business communications. However, taken in context, her use of the term "partner" is of little legal significance. Fuller used the term "partner" in an informal sense.[3] She testified that she used the word "partner" to refer to any entity with whom Vera Bradley engaged in business transactions,

---

[3] Conversely, a formal or legal partnership under Ohio law has the following elements:

    (1) an express or implied partnership contract between the parties;

    (2) the sharing of profits and losses;

    (3) mutuality of agency;

    (4) mutuality of control; and

    (5) the co-ownership of the business and of the property used for partnership purposes or acquired with partnership funds.

*Anchor*, 94 F.3d at 1024. Vesi does not argue at this stage that Vera Bradley and Vesi were legal partners.

such as manufacturers, retail partners, and creative agencies. (Doc. 76 at PageID 2921–2923.)[4] The fact that Fuller expected Vera Bradley to be candid with and disclose potential conflicts of interest to Vesi *and* to the other entities with whom Vera Bradley worked does not support Vesi's argument. (*Id.* at PageID 2926.) Instead, it supports a finding that the relationship between Vesi and Vera Bradley was ordinary or typical of Vera Bradley's business relationships.[5] Moreover, Fuller was not employed by Vera Bradley in 2018 and 2019 when the allegedly tortious acts occurred. Her testimony regarding the nature of the relationship in 2015 to 2017 is of limited value.[6]

Vesi also points to the fact that for approximately one year from May or June 2018 until Vesi ceased operations in May 2019, Vera Bradley discussed with Vesi its financial problems. Vesi's contends that the fact that it disclosed to Vera Bradley the "Amazon debacle" and its resulting cash flow problems in 2018 is objective evidence that Vesi was reposing trust and confidence in Vera Bradley. Vesi also points to numerous discussions between the parties and proposals that the two companies exchanged to help ease Vesi's financial problems. Vesi suggests that it would not have provided three years of financial records to Vera Bradley if it did not place a special trust in Vera Bradley.

Vesi's argument again focuses on the relationship between the parties from its

---

[4] VB's Wallstrom similarly testified he used the term "partner" to refer to the spirit of the working relationship Vera Bradley has with retailers, vendors, and customers where they try to create win/win scenarios and build things together. (Doc. 78 at PageID 3255.)

[5] Relatedly, Vera Bradley had a Conflict of Interest and Business Ethics Policy that required it to deal fairly with its customers, suppliers, and partners, to not misrepresent or conceal facts, and to not abuse confidential and privileged information. (Doc. 1-1 at PageID 15–16.) It applied to Vesi the same as it applied other customers, suppliers, and dealers, against suggesting that Vera Bradley's relationship with Vesi was one of special confidence or trust.

[6] Finally, Fuller testified at her deposition that Steve Bohman, VB's Vice President of Global Sourcing, told her during the discovery time frame of this case that Vera Bradley "really fucked" Vesi. (Doc. 76 at PageID 2900–2902.) However, Fuller was not asked and did not testify as to the context or intended meaning of Bohman's remark other than that Bohman said it while the two were discussing that Fuller was on the list of deponents. Assuming it is an acknowledgement that Vera Bradley's decision to not provide a loan to or acquire Vesi hastened the end of Vesi's business operations—a big assumption—it is not evidence that the Vera Bradley owed Vesi a fiduciary duty.

perspective, and not from Vera Bradley's perspective. Vera Bradley exploring options to help keep financially viable a separate company with whom it regularly transacted business, without more, is not sufficient to establish a fiduciary relationship between the parties. Requesting financial statements is due diligence by a potential creditor. For example, Vesi had fallen behind on the payments it owed to Vera Bradley by as much as $120,000 pursuant to the collegiate program price list agreement in the mid-2018 timeframe. Vesi's Visconti and Davidson testified that they requested an extended payment plan, and Vera Bradley agreed to it. It is as likely that Vera Bradley was operating to protect its own financial interests than it is to suppose Vera Bradley was working to protect only Vesi's interests. Visconti testified that Vesi stopped looking for other investors at some point during its discussions with Vera Bradley in late 2018 or early 2019, but it points to no evidence that Vera Bradley told Vesi to stop looking for other investors or knew that it had done so. (Doc. 44 at PageID 488–489.)

In fact, written communications during this time frame indicate that Vera Bradley was guided by its own financial interests. VB's Enwright stated in a November 2018 email to Vesi's Visconti that an investment by Vera Bradley did not "make[] 100% sense on [Vera Bradley's] side right now," but he stated that he was open to any idea that would "work[] for both parties." (Doc. 77 at PageID 3153.) He reiterated again in a December 21, 2021 phone call that it did not "necessarily make sense for us [Vera Bradley] to give you [Vesi] a couple million dollars as of right now." (Doc. 45-1 at PageID 875.) Visconti responded in part that Vesi's demise would hurt Vera Bradley because it would be more expensive for Vera Bradley to continue the collegiate program on its own because of the licensing cost. (*Id.* at PageID 880–884.) When Vesi raised the idea of a $500,000 loan, VB's Wallstrom and Enwright responded on February 26, 2019 that they needed to see a plan and be confident that Vera Bradley would be paid back.

17

(Doc. 45 at PageID 741.) On April 1, 2019, Vera Bradley informed Vesi that Vera Bradley was not going to acquire Vesi or extend a loan to Vesi. VB's Wallstrom stated that he did not think that Vesi was viable going forward even with Vera Bradley's help. (Doc. 45-1 at PageID 906–909, 917.) He stated that the situation put Vera Bradley in a "precarious position" and that providing a loan could be a "significant risk" for Vera Bradley. (*Id.* at 908, 914.) These statements and conversations indicate that both parties knew that Vera Bradley was looking to protect its own financial interests.

In sum, Vesi has not pointed to any evidence in the record where Vera Bradley indicated that it was taking responsibility to solve Vesi's problem, that it owed a duty to Vesi, or that it would prioritize Vesi's interests over its own. To the contrary, Vesi's Davidson and Visconti testified that they understood that Vera Bradley was not legally obligated to acquire Vesi or give it a loan. (Doc. 45 at PageID 726, 730, 780; Doc. 44 at PageID 503.) Davidson explained that he knew Vera Bradley was a "public company" and that any action it took "could be scrutinized and therefore needed to be done appropriately." (Doc. 45 at PageID 738; Doc. 45-1 at PageID 883.)

For these reasons, the Court concludes as a matter of law that no reasonable factfinder could conclude that Vera Bradley owed Vesi a fiduciary duty. The undisputed facts demonstrate that Vera Bradley engaged in arms-length business transactions with Vesi and sought to protect its own interests. Because no fiduciary duty exists, it is unnecessary for the Court to examine the other elements of a breach of fiduciary duty claim. The Court will grant summary judgment to Vera Bradley on Vesi's sole remaining claim against it.

**B.      Vera Bradley's Counterclaim Against Vesi for Money Owed**

There is no dispute that Vesi owed Vera Bradley $47,684.43 for goods that it had

received, but not paid for. (Doc. 44 at PageID 560.) There is also no dispute that Vesi's Visconti and Davidson personally guaranteed Vesi's debt on its Vera Bradley account. (Doc. 44 at PageID 339; Doc. 45-1 at PageID 850.) Nonetheless, Vesi asserts that Vera Bradley is not entitled to damages or summary judgment on its counterclaim because Vera Bradley has a security interest in goods it sold to Vesi that exceeds the amount of the debt owed. (Doc. 88 at PageID 4744.)

It is true that the application that Vesi completed to obtain goods on credit from Vera Bradley contained a provision giving Vera Bradley as security interest in the goods:

> As security for payment of the purchase of goods purchased from VB by Customer in connection with such purchase, VB shall have a security interest in goods sold to Customer until all amounts owed to VB for such purchase are paid in full. Customer authorizes VB to file all Uniform Commercial Code financing statements naming Customer as the debtor necessary to perfect VB's security interest in goods sold to Customer.

(Doc. 45-1 at 850.) However, Vesi does not point to any case law, code, or regulation requiring Vera Bradley to repossess the goods upon which it has a security interest in lieu of seeking damages. Nor is the Court aware of such authority. The Court will grant summary judgment to Vera Bradley on its counterclaim.

### IV. CONCLUSION

For the foregoing reasons, Vera Bradley's Motion for Summary Judgment (Doc. 52) is **GRANTED** as to both Vesi's claim against it and its counterclaim against Vesi for $47,684.43. Vesi's Motion for Leave to File a Sur-Reply (Doc. 93) is **GRANTED**, but the arguments and evidence cited therein were not dispositive of the summary judgment issues.

**IT IS SO ORDERED.**

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge